UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F., a minor, by and through her Guardian Ad Litem, LIZ FRANCO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WOODLAKE, et al.,<br><br>Defendants. | Case No. 1:23-cv-01569-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTIONS FOR APPROVAL OF MINORS' COMPROMISE**<br><br>(Docs. 36, 37)<br><br>**(FOURTEEN DAY DEADLINE)** |

## I. INTRODUCTION

On August 8, 2025, minor Plaintiffs J.F. and V.F., by and through their parent and guardian *ad litem*, Liz Franco, filed an application for court approval of the settlement and compromise of the minors' claims against Defendants City of Woodlake, Chris Kaious, and Juan Gonzales ("Defendants"). (Doc. 36.) That same day, minor Plaintiff M.M., by and through her parent and guardian *ad litem*, Jennifer Menendez, filed an application for court approval of the settlement and compromise of the minor's claims against Defendants (collectively, the "Applications"). (Doc. 37.) The Applications are unopposed.[1] The Court finds the matter

---

[1] According to Plaintiffs' application, counsel "contacted Defendants' counsel to confirm that Defendants will not be opposing the instant application, including by providing Defendants with a copy of the application." (Valenzuela Decls. ¶ 1.) Counsel represents that "Defendants and their counsel do not oppose the filing of this Application on an *ex parte* basis, nor do Defendants and

1

suitable for resolution without oral argument and the matter is submitted on the record. L.R. 230(g).

Having considered the Applications, the terms of the settlement, and the record in this matter, the Court finds that the proposed settlement agreement and means of disbursement are fair and reasonable. For the reasons that follow, the Court will recommend that the Unopposed *Ex Parte* Application for Approval of the Compromise of Minor Plaintiffs J.F. and V.F. (Doc. 36) and the Unopposed *Ex Parte* Application for Approval of the Compromise of Minor Plaintiff M.M. (Doc. 37), be approved and granted.

## II. BACKGROUND

Minor Plaintiffs J.F. and V.F., by and through their guardian *ad litem*, Liz Franco, and minor Plaintiff M.M., by and through her guardian *ad litem*, Jennifer Menendez, filed this action on November 7, 2023, against Defendants City of Woodlake, Chris Kaious, and Juan Gonzales. (Doc. 1.) On April 18, 2024, Plaintiffs moved this Court for leave to amend the complaint. (Doc. 15.) Plaintiffs filed a First Amended Complaint ("FAC") on May 15, 2024 asserting claims of: (1) Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983), (2) Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983), (3) Substantive Due Process (42 U.S.C. § 1938), (4) Battery, (5) Negligence, and (6) Violation of the Bane Act. (Doc. 19.) Plaintiffs seek compensatory and punitive damages. (*Id.*)

In the FAC, Plaintiffs allege that on December 17, 2022, City of Woodlake police officers Chris Kaious and Juan Gonzales ("Officers") stopped Victor Melendez's ("Decedent") vehicle near Highway 198 and Road 196 in Tulare County. (*Id.* ¶ 19.) Plaintiffs further allege that during the course of the traffic stop, the Officers "discharged their firearms at DECEDENT, striking him several times, causing DECEDENT serious physical injury and eventually killing him." (*Id.*) Plaintiffs further provide that "[i]n information and belief, DECEDENT did not have a gun during the incident, including at the time of the shooting," "DECEDENT did not pose an immediate or imminent threat of death or serious physical injury" to the Officers or any other

---

their counsel oppose the substance of this Application." (Valenzuela Decls. ¶ 3.)

2

1  person, "DECEDENT did not try to punch, kick or strike any of the involved officers and did not
2  physically try to touch them or their weapons/equipment," "DECEDENT was not about to run
3  anyone over at the time of the shooting, no one was about to be struck by DECEDENT's vehicle
4  at the time of the shooting," "[t]here were other reasonable alternatives available to the involved
5  officers, which were not exhausted prior to using deadly force against DECEDENT," "the
6  involved officers did not provide timely medical care to DECEDENT, they did not timely
7  summons medical assistance for DECEDENT, and/or they prevented medical assistance from
8  being timely provided to DECEDENT."  (*Id.* ¶ 18-24.)

9  Defendants answered the FAC on June 12, 2024.  (Doc. 24.)

10  On June 13, 2024, the Court granted the applications of Liz Franco for appointment as
11  guardian *ad litem* for J.F. and V.F., minors.  (Docs. 25, 26.)  The same day, the Court granted the
12  application of Jennifer Menendez for appointment as guardian *ad litem* for M.M., a minor.  (Doc.
13  27.)  On July 25, 2025, Plaintiffs filed a notice of settlement of the action.  (Doc. 34.)  On August
14  8, 2025, Plaintiffs filed the instant applications for court approval of the settlement and
15  compromise of the minors' claims.  (Docs. 36, 37.)  According to the Applications, Plaintiffs and
16  Defendants reached agreed upon settlement amounts for each plaintiff's recovery and attorneys'
17  fees, but require court approval under the Federal Rules of Civil Procedure, Local Rules of the
18  Eastern District of California, and the California Rules of Court.  (Docs. 36, 37 at 5-6, 9.)

19  **Terms of Settlement**

20  Defendants have agreed to pay a total of $300,000 to settle the claims of all three
21  Plaintiffs, to be split equally, plus an additional $150,000 in attorneys' fees, including statutory
22  fees and costs.  (Docs. 36, 37 at 6-7; Declaration of Eric Valenzuela ("Valenzuela Decl.")[2] at ¶ 9.)
23  Plaintiffs note that the contingency retainer agreements between Plaintiffs and their attorneys
24  provide for a 40% contingency fee, but J.F., V.F. and M.M.'s attorneys have agreed to receive a
25  33.33% contingency fee and are not deducting any litigation costs from the Plaintiffs' share of the

---

[2] The Valenzuela Declarations submitted in support of the minors' compromise application for Plaintiffs J.F. and V.F. (Doc. 36-1), and in support of the separate minor's compromise application for Plaintiff M.M. (Doc. 37-1) are substantially similar.  Where appropriate, the Court will cite to the "Valenzuela Decls." when referring to both Declarations.

3

settlement.  (Valenzuela Decls. ¶ 7.)

Plaintiffs are requesting that $100,000 be used to fund a structured settlement annuity for each Plaintiff.  (Valenzuela Decls. at ¶ 12.)  The proposed structured settlement annuity and disbursement schedules, attached as exhibits to the respective Applications, provide the total amount that Plaintiffs shall receive, and provide further that monthly payments of $350 are to be made "to be used specifically and exclusively on minor [Plaintiffs] for her necessities of life, including food, clothing, shelter and educational expenses." (Valenzuela Decls. ¶¶ 13, 14.)  Plaintiffs' guardians *ad litem* Liz Franco and Jennifer Menendez have reviewed the proposed annuity and disbursement schedules and believe them to be in the best interest of Plaintiffs.  (*Id*.)

### III.  LEGAL STANDARD

No compromise or settlement of a claim by a minor is effective unless it is approved by the Court.  L.R. 202(b).  In actions in which the minor is represented by an appointed representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise must first be approved by the state court having jurisdiction over the personal representative. L.R. 202(b)(1). In all other actions, the application for approval of a proposed settlement or compromise must disclose, among other things, the following:

> the age and sex of the minor. . . , the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court . . . .

L.R. 202(b)(2).

Additionally, when, as here, the minor is represented by an attorney, the representation must be disclosed to the Court, including the terms of employment and whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, whether the attorney stands in any relationship to that party, and whether the attorney has received or expects to receive any compensation, from whom, and the amount. L. R.

4

202(c).

Federal Rule of Civil Procedure 17(c) also imposes on district courts a special duty to safeguard the interests of litigants who are minors. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). In the context of proposed settlements in suits involving minor plaintiffs, the district court's special duty requires it to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id*. (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). However, in *Robidoux*, the Ninth Circuit cautioned that this inquiry "requires only that the district court consider whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiffs' counsel." *Id*. at 1182 (holding that district court erred in denying settlement based solely on the proportion of the settlement going to plaintiffs' counsel).

**IV.    DISCUSSION**

**A. The Applications Satisfy the Requirements of Local Rule 202**

1. <u>The Minors</u>

According to the moving papers and record, Plaintiffs J.F. and V.F. are the biological children of Decedent, born in 2013 and 2011 respectively. (Doc. 36 ¶ 2.) Plaintiff M.M. is also the biological child of Decedent, born in 2016. (Doc. 37 ¶ 2.) J.F., V.F., and M.M. are Decedent's lawful successors in interest. (Valenzuela Decls. ¶ 1.)

2. <u>Disclosure of Attorney Interest</u>

The moving papers specify that Plaintiffs J.F., V.F., and M.M. are represented by the Law Offices of Dale K. Galipo and Chain, Cohn and Clark. (Doc. 36 ¶ 7; Doc. 37 ¶ 7.) Counsel's representation of Plaintiffs has been done on a contingency basis. (Valenzuela Decls. ¶ 9.) Plaintiffs' attorneys, the Law Offices of Dale K. Galipo and Chair, Cohn and Clark, "did not become concerned with this matter at the instance of any party against whom the claim of said minors is asserted," "are not employed by any other party, or any insurance carrier involved in this matter," and "have not to date received any compensation for their services in connection herewith from any person." (Valenzuela Decls. ¶¶ 17-19.)

//

### 3. Causes of Action to Be Settled

The Applications explain that the instant case is a civil rights action brought pursuant to 42 U.S.C. § 1983. (Docs. 36, 37 at 10 ¶ 2.) The causes of action arise out of the shooting of Victor Melendez on December 17, 2022 by Chris Kaious and Juan Gonzales, officers employed by the City of Woodlake Police Department. (Docs. 36, 37 at 10-11 ¶ 2.) Plaintiffs' damages in this case arise from (1) the injuries suffered by the decedent, for which Plaintiffs can recover survival damages as successors in interest; and (2) Plaintiffs' individual loss of the decedent's comfort, care, companionship, training, support, and guidance. (Valenzuela Decls. ¶ 7.)

On December 17, 2022, officers received a radio dispatch from Decedent's girlfriend alleging that Decedent "was fighting with her, had put a gun to her head and had choked her." (Doc. 36 at 11 ¶ 3; Doc. 37 at 10 ¶ 3.) Officers conducted a records check and determined that Decedent "had an extensive criminal history and incarceration history." (*Id.*) When law enforcement arrived at the house, they located Decedent inside of his vehicle and a vehicle pursuit ensued. (*Id.*) According to the Applications, during the course of the vehicle pursuit, Decedent drove on the wrong side of the road, reached speeds of up to 100 mph, and was eventually brought to a stop by a spike strip which punctured the rear tire of Decedent's vehicle. (*Id.*) After application of the spike strip, Decedent lost control of his vehicle and struck two occupied vehicles near Highway 198 and Road 196 in Tulare County. (Doc. 36 at 11 ¶ 3; Doc. 37 at 10 ¶ 3.) One of the vehicles struck had two young men as the passengers and the other vehicle was father with his two young children in the car. (*Id.*)

According to the Applications, after colliding with the two vehicles, Decedent's vehicle became inoperable. (*Id.*) Several officers surrounded the vehicle and commanded Decedent to exit the vehicle. (*Id.*) Decedent did not comply with the officers' commands. (*Id.*) Remaining inside of the vehicle, Decedent's hand was seen inside of a black fanny pack "as if he was going to draw a weapon." (Doc. 36 at 11 ¶ 3; Doc. 37 at 11 ¶ 3.) Decedent did not comply with officers' commands to show his hands. (Doc. 36 at 12 ¶ 3; Doc. 37 at 11 ¶ 3.) According to the Applications, at that point Decedent "grabbed a rosary nearby as if he was saying a prayer, lit a cigarette and began to raise his right had as if he was pulling out a gun." (*Id.*) Officers Chris

Kaious and Juan Gonzales then fatally fired several shots at Decedent. (*Id.*) The Officers alleged that they believed that Decedent was going to pull out a gun and shoot them or other officers, as the original call involved the use of a handgun. (*Id.*) The defense has argued throughout this action that Decedent was engaging in "suicide by cop." (*Id.*) The Applications contend that body camera footage shows that Decedent's right hand was still inside of the black fanny pack after the shooting occurred. (Doc. 36 at 12 ¶ 3; Doc. 37 at 11 ¶ 3.) At autopsy, Decedent's toxicology report tested positive for methamphetamines. (*Id.*)

### B. The Terms of the Settlement are Fair and Reasonable[3]

As indicated, the agreed upon settlement regarding the claims made by J.F., V.F., and M.M. is $300,000, to be distributed evenly to each minor Plaintiff, plus an additional payment of $150,000 in attorneys' fees, including statutory fees and costs. (Valenzuela Decl. ¶ 5.)

The parties indicate that the settlement is a result of "protracted settlement negotiations over several months." (Docs. 36 and 37 at 12 ¶ 4.) According to the Applications, during the negotiations, the defense maintained that they would not agree to settle for any amount over $300,000. (Docs. 36 and 37 at 12 ¶ 4.) Plaintiffs accordingly believe that $300,000 to resolve Plaintiffs' claims, plus $150,000 for attorneys' fees, including statutory fees and costs, to be "fair and reasonable considering the substantial liability issues and negative evidence in the case," including Decedent's substantial criminal and incarceration history." (Doc. 36 and 37 at 12 ¶ 4.) This includes evidence that Decedent was a convicted cocaine trafficker and had spent several years in prison. Additionally, the circumstances concerning the initial call, which involved domestic violence for Decedent choking and pointing a gun at his girlfriend's head, along with the facts that Decedent fled the police resulting in a high speed chase and a vehicle collision with multiple vehicles, the presence of methamphetamine in Decedent's system at autopsy, and Decedent's refusal to exit his vehicle or show his hands after the collision. The Applications maintains that the facts, "under the totality of the circumstances, could support a suicide by cop

---

[3] The terms of the settlement are summarized from those detailed in Plaintiffs' moving papers (Docs. 36 and 37), as well the exhibits attached to the Valenzuela Declarations (Doc. 36-5 and Doc. 37-4).

7

scenario," and that "there was a significant concern and chance that the jury could return a verdict for the defense and have to deal with the doctrine of qualified immunity." (Docs. 36, 37 at 13.)

Liz Franco, guardian *ad litem* for minor Plaintiffs J.F. and V.F., and Jennifer Menendez, guardian *ad litem* for minor Plaintiff M.M., have both inquired into and investigated to determine the facts involved here. (Doc. 36 and 37 at 12-13.) Ms. Franco and Ms. Menendez understand that if the Applications are approved, Plaintiffs will be forever barred from seeking any further recovery. (*Id.*) Ms. Franco and Ms. Menendez recommends the compromise and the proposed distribution to Plaintiffs as being fair, reasonable, and in the best interest of the minor plaintiff. (*Id.* at 13.)

Having considered the nature of the causes of action to be settled, the facts and circumstances out of which the causes of action arose, along with the arguments put forth by Plaintiffs in the Applications, the Court finds the settlement is fair and reasonable.

### C. The Manner of Distribution of the Settlement Funds is Reasonable

The Application requests that $100,000 be used to fund a structured settlement annuity for Plaintiffs J.F., V.F., and M.M. each. (Valenzuela Decls. ¶ 12.) There is to be an additional payment of $150,000 in attorneys' fees, including statutory fees and costs. (*Id.* ¶ 11.)

#### i.   Minor Plaintiffs J.F. and V.F.

Under the proposed structured settlement annuity and disbursement schedules for J.F. attached to her Application as "Exhibit A," (*see* Doc. 36-2) the total amount that Plaintiff J.F. shall receive after the final payment is made to her is $131,300 or $106,800 in annual payment with monthly payments of $350 for 5 years and 10 months (totaling $24,500). (Doc. 36-1, Valenzuela Decl. ¶ 13.) J.F.'s parent and guardian *ad litem*, Liz Franco, will receive a monthly payment of $350 to be made to until J.F. turns seventeen years old. (*Id.*) Ms. Franco agrees that this monthly payment of $350 is to be used specifically and exclusively on minor J.F. for her necessities of life, including food, clothing, shelter and educational expenses. (*Id.*)

Under the proposed structured settlement annuity and disbursement schedules for V.F. attached to her Application as "Exhibit B," the total amount that Plaintiff V.F. shall receive after the final payment is made to her is $119,500 or $105,500 in annual payment with monthly

8

payments of $350 for 3 years and 4 months (totaling $14,000). (Doc. 36-1, Valenzuela Decl. ¶ 14.) The structured settlement annuity provides for a monthly payment of $350 to be made to parent and guardian *ad litem*, Liz Franco, until V.F. turns seventeen years old. (*Id.*) Ms. Franco agrees that this monthly payment of $350 is to be used specifically and exclusively on minor V.F. for her necessities of life, including food, clothing, shelter and educational expenses. (*Id.*)

In the Proposed Order attached to the Application (*see* Doc. 36-5), Plaintiffs provide additional information regarding the manner of distribution of the settlement for J.F. and V.F. The settlement shall be distributed such that:[4]

1. Defendants, through counsel, shall prepare and deliver the drafts for the gross settlement proceeds no later than 30 days of this Order being issued, payable as follows:

    1) A single draft for $150,000 shall be made payable to the "Law Offices of Dale K. Galipo, Client Trust Account." These funds shall be used to satisfy all the attorneys' fees and costs owed (by all three Plaintiffs M.M., J.F. and V.F.) to the Law Offices of Dale K. Galipo.

    2) A draft for $100,000 shall be made payable to Metropolitan Tower Life Insurance Company ("MetLife"). These funds shall be used to purchase an annuity in accord with "Exhibit A" of the Valenzuela Decl. which outlines the future periodic payments.

    3) With these funds, the Defendants/Assignee shall purchase an annuity policy from Metlife, which is rated A+ Superior, as determined by A.M. Best Company. Metlife will act as Guarantor for Assignee of the payments outlined in "Exhibit A" of the Valenzuela Decl.

    4) A draft for $100,000 shall be made payable to Metropolitan Tower Life Insurance Company ("MetLife"). These funds shall be used to purchase an annuity in accord

---

[4] Rather than attach an Addendum to this Order, the Court refers back to Exhibit A and B of the Valenzuela Declarations (Doc. 36-5 and Doc. 37-4) for the terms of the settlement. The terms of the proposed orders have been included here and in the section below for completeness and revised accordingly for clarity.

9

    with "Exhibit B" of the Valenzuela Decl. which outlines the future periodic payments.

  5) With these funds, the Defendants/Assignee shall purchase an annuity policy from Metlife, which is rated A+ Superior, as determined by A.M. Best Company. Metlife will act as Guarantor for Assignee of the payments outlined in "Exhibit B" of the Valenzuela Decl.

  6) The Court directs the Assignee to purchase the annuity contracts on behalf of the minor plaintiffs. The funds shall be disbursed in accord with the terms of the Annuities as outlined in Exhibit A and B of the Valenzuela Decl. Metlife shall act as Guarantor of the Defendant/Assignee. Disbursement drafts will be made payable and will begin being issued directly to J.F. and V.F. upon reaching the age of maturity according to the payment schedule. Further, as set forth in "Exhibit A" and "Exhibit B" a monthly payments of $350 shall to be made to parent and Petitioner Liz Franco (for 5 years and 10 months for J.F. and 3 years and 4 month for V.F.). These monthly payments of $350 shall be used specifically and exclusively on minors J.F. and V.F. for their necessities of life, including food, clothing, shelter and educational expenses.

    ii. <u>Minor Plaintiff M.M.</u>

Under the proposed structured settlement annuity and disbursement schedules for M.M. attached to her Application as "Exhibit A," the total amount that Plaintiff M.M. shall receive after the final payment is made to her is $148,800 or $111,000 in annual payment with monthly payments of $350 for 9 years and 1 month (totaling $37,800). The structured settlement annuity provides for a monthly payment of $350 to be made to parent and guardian *ad litem*, Jennifer Menendez, until M.M. turns seventeen years old. Ms. Menendez is in agreement that this monthly payment of $350 is to be used specifically and exclusively on minor M.M. for her necessities of life, including food, clothing, shelter and educational expenses. (Doc. 37-1 ¶ 13.)

In the Proposed Order attached to the Application (*see* Doc. 37-4), Plaintiff provides additional information regarding the manner of distribution of the settlement for M.M. The

10

settlement shall be distributed such that:

    1. Defendants, through counsel, shall prepare and deliver the drafts for the gross settlement proceeds no later than 30 days of this Order being issued, payable as follows:

        1) A single draft for $150,000 shall be made payable to the "Law Offices of Dale K. Galipo, Client Trust Account." These funds shall be used to satisfy all the attorneys' fees and costs owed (by all three Plaintiffs M.M., J.F. and V.F.) to the Law Offices of Dale K. Galipo.

        7) A draft for $100,000 shall be made payable to Metropolitan Tower Life Insurance Company ("MetLife"). These funds shall be used to purchase an annuity in accord with "Exhibit A" of the Valenzuela Decl. which outlines the future periodic payments.

        8) With these funds, the Defendants/Assignee shall purchase an annuity policy from Metlife, which is rated A+ Superior, as determined by A.M. Best Company. Metlife will act as Guarantor for Assignee of the payments outlined in "Exhibit A" of the Valenzuela Decl.

        9) The Court directs the Assignee to purchase the annuity contract on behalf of the minor plaintiff. The funds shall be disbursed in accord with the terms of the Annuity as outlined in "Exhibit A" of the Valenzuela Decl.

        2) Metlife shall act as Guarantor of the Defendant/Assignee. Disbursement drafts will be made payable and will begin being issued directly to M.M. upon reaching the age of maturity according to the payment schedule. Further, as set forth in "Exhibit A" a monthly payment of $350 shall to be made to parent and Petitioner Jennifer Menendez (for 9 years and 1 month). This monthly payment of $350 shall be used specifically and exclusively on minor M.M. for her necessities of life, including food, clothing, shelter and educational expenses.

    Having considered the details contained herein, the Court finds the manner of distribution of the settlement to be practical, proper, and reasonable.

11

    **D. Attorneys' Fees**

"Absent a showing of good cause, courts in the Eastern District of California generally consider twenty-five percent of the recovery as the benchmark for attorneys' fees in contingency cases for minors." *J.M. v. Tulare Cty. Sch. Dist.*, No. 1:21-cv-01766-KJM-EPG, 2025 WL 436146, at *3 (E.D. Cal. Jan. 27, 2025).

As indicated, the agreed upon settlement regarding the claims by Plaintiffs is $300,000 to settle their claims, plus $150,000 in attorneys' fees including statutory fees and costs. (Valenzuela Decls. ¶ 5.) Plaintiff explains that this fee amount reflects the advocacy and litigation efforts undertaken to secure the settlement. (Valenzuela Decls. ¶ 10.) The Court notes that Plaintiffs' counsel "[has] agreed to not deduct any of the litigations costs from the Plaintiffs' share of the settlement." (*Id.*) The Application provides that the contingency retainer agreements between Plaintiffs and their attorneys provide for a 40% contingency fee, but that "J.F., V.F. and M.M.'s attorneys would only receive what is the equivalent of 33.33% contingency fee with respect to the minors' portions of the settlement funds and are also not deducting any litigation costs from the Plaintiffs' share of the settlement." (Doc. 36 ¶ 7; Doc. 37 ¶ 7.)

Because the Ninth Circuit instructs district courts to limit the scope of review to the fairness of the recovery to the minor plaintiff and not the value designated for counsel, the Court does not find that the fees are excessive or unreasonable. *I.W. by & through Aguirre v. Clovis Unified Sch. Dist.*, No. 1:24-CV-01074-JLT-BAM, 2025 WL 972229, at *9 (E.D. Cal. Apr. 1, 2025), *report and recommendation adopted*, 2025 WL 1151063 (E.D. Cal. Apr. 18, 2025).

**V. CONCLUSION AND RECOMMENDATION**

For the reasons stated, the Court finds the settlement is fair and reasonable. Accordingly, IT IS HEREBY RECOMMENDED that:

    2. Plaintiffs' motions for approval of minors' compromise (Docs. 36, 37) be GRANTED; and

    3. The settlement be APPROVED as fair and reasonable.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within

**fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)). <u>**To expedite the matter, if the parties have no objections, then the parties may each file a statement of non-objection before expiration of the fourteen-day period**</u>.

IT IS SO ORDERED.

Dated:   **October 24, 2025**            /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE

13